**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**NORMAN SOLOVAY, As Assignee of HARTMAN & CRAVEN, LLP, and on behalf of THE SARCONE LAW FIRM,**

       **Plaintiff,**

  -against-

**EDWARD MCMAHON and PAMELA MCMAHON,**

       **Defendants.**
------------------------------------------------------------------x

Case No. 08 CV 6793
(AKH) (RLE)

**ANSWER,
AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

**DEFENDANTS DEMAND
TRIAL BY JURY**

  Defendants Edward McMahon and Pamela McMahon, by their attorney, Russell M. Wolfson, answer the complaint of plaintiff Norman Solovay, as assignee of Hartman & Craven, LLP and on behalf of The Sarcone Law Firm, in the within action as follows:

  1.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the complaint.

  2.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "2" of the complaint.

  3.  Admit the allegations contained in paragraph "3" of the complaint.

  4.  Admit the allegations contained in paragraph "4" of the complaint.

  5.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the complaint.

  6.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "6" of the complaint.

  7.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the complaint.

8. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "8" of the complaint.

9. Admit the allegations contained in paragraph "9" of the complaint.

10. Admit the allegations contained in paragraph "10" of the complaint.

11. Deny the allegations contained in paragraph "11" of the complaint.

12. Deny the allegations contained in paragraph "12" of the complaint.

13. Deny the allegations contained in paragraph "13" of the complaint.

14. Deny the allegations contained in paragraph "14" of the complaint.

15. In response to paragraph "15" of the complaint, repeat and reiterate all of the responses given above to paragraphs "1" through "14" as if fully set forth at length herein.

16. Deny the allegations contained in paragraph "16" of the complaint.

17. In response to paragraph "17" of the complaint, repeat and reiterate all of the responses given above to paragraphs "1" through "16" as if fully set forth at length herein.

18. Deny the allegations contained in paragraph "18" of the complaint.

19. In response to paragraph "19" of the complaint, repeat and reiterate all of the responses given above to paragraphs "1" through "18" as if fully set forth at length herein.

20. Deny the allegations contained in paragraph "20" of the complaint, except admit that defendants objected to the July 2006 bill referenced in the complaint.

21. Deny the allegations contained in paragraph "21" of the complaint.

22. In response to paragraph "22" of the complaint, repeat and reiterate all of the responses given above to paragraphs "1" through "21" as if fully set forth at length herein.

23. Deny the allegations contained in paragraph "23" of the complaint, except admit that defendants have paid more than $10,000 to plaintiff.

24. Deny the allegations contained in paragraph "24" of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

25. Plaintiff has failed to state a cause of action upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

26. Plaintiff's claims are barred by reason that he is not the real party in interest and therefore is precluded from bringing all or a portion of the claims he has asserted.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

27. Plaintiff's claims are barred by the statute of frauds.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

28. The alleged agreement upon which plaintiff relies in the assertion of his claims is subject to rescission by reason of plaintiff's fraud, coercion undue influence and/or duress.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

29. All or a portion of the amounts claimed by plaintiff to be owed have been paid by defendants.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

30. Plaintiff did not render the services for which plaintiff now seeks payment.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

31. Defendants, being not fully advised as to all of the facts and circumstances surrounding the incident complained of, hereby assert and reserve the defenses of accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, estoppel, failure of consideration, unconscionability, unclean hands, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense which the further investigation of this matter may prove applicable herein.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

32. Plaintiff's claims are barred by reason of his failure to satisfy a condition precedent.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

33. Plaintiff's claims are barred by reason of his professional malpractice, breach of fiduciary duty or his violation of the Professional Code of Ethics.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

34. Plaintiff's claims are barred because there was no privity of contract between Hartman & Craven, LLP, The Sarcone Law Firm and defendants.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

35. The alleged agreement upon which plaintiff relies limits plaintiff's claims against defendants to $112,465.00.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

36. No written retainer agreement exists.

## AS AND FOR A FIRST COUNTERCLAIM FOR RESCISSION

37. Defendants Edward McMahon ("Mr. McMahon") and Pamela McMahon ("Mrs. McMahon") (collectively, the "McMahon's") are residents of the State of California.

38. Mr. McMahon is a famous media personality.

39. Upon information and belief, plaintiff Norman Solovay ("Solovay") is a resident of the State of New York.

40. Solovay was retained by Mr. McMahon's daughter, Linda Schmerge ("Schmerge"), to represent her in a New York matrimonial proceeding in about February 2005.

41. Mrs. McMahon is Schmerge's step-mother.

42. The matrimonial proceeding involved, among other things, the custody of the McMahon's grandson.

43. Solovay was aware that Schmerge was Mr. McMahon's daughter at the time he was retained by Schmerge.

44. Schmerge requested that Solovay settle the matrimonial action on many occasions, however, Solovay did not comply with Schmerge's directives and instead prolonged the litigation.

45. In addition, Solovay deliberately and unjustifiably overcharged Schmerge for the legal services allegedly rendered.

46. Solovay wrongfully and intentionally prolonged the litigation and overcharged Schmerge for legal services in an attempt to capitalize on the McMahon's fame, notoriety and perceived wealth.

47. As the matrimonial proceeding progressed, Schmerge was unable to pay the substantial legal fees charged by Solovay.

48. At the time, Solovay advised the McMahon's that Schmerge was in danger of losing custody of her son and threatened to withdraw as counsel if the McMahon's did not immediately agree to guaranty Schmerge's debt.

49. Solovay advised the McMahon's that Solovay's withdrawal at that juncture would likely result in Schmerge's loss of the custody of her son since the withdrawal proceedings would be negatively viewed by the Court.

50. Believing that they had no other options available to them based upon Solovay's statements, the McMahon's agreed to guaranty a portion of Schmerge's debt.

51. Solovay continued to represent Schmerge and charge her with exorbitant and unjustified fees.

52. Solovay continued to warn Schmerge and the McMahon's that if they failed to pay his fees, Schmerge could lose custody of her son.

53. During the same period, the McMahon's paid Solovay and his firm more than $95,000.00 in unjustified fees on behalf of Schmerge.

54. The McMahon's continued to pay Solovay's fees without justification out of fear of Schmerge's loss of the custody of her son.

55. By about August 2006, Schmerge and the McMahon's were unable to pay certain bills issued by Solovay.

56. Solovay continued to threaten to withdraw as counsel and warn that the withdrawal could result in Schmerge's loss of custody of her son. Solovay's tone was increasingly menacing.

57. Solovay knew that the McMahon's were having other highly publicized financial issues and threatened the McMahon's that if he did not receive immediate payment, he would commence withdrawal proceedings and notify the media of the McMahon's inability to pay. To emphasize his point, Solovay likened the McMahon's situation to the negative press Michael Jackson was receiving as a result of his attorney's withdrawal motion in a separate, unrelated lawsuit.

58. Several months later, while continuing to represent Schmerge, Solovay threatened to commence suit against the McMahon's for alleged non-payment of Schmerge's bills. In connection therewith, Solovay prepared a complaint and sent it to the McMahon's prior to filing it. The complaint was unduly detailed, contained unnecessary personal information and was specifically designed to highlight the McMahon's financial situation.

59. Solovay prepared and sent the draft complaint to the McMahon's in a deliberate attempt to compel the McMahon's to pay his alleged outstanding bills.

60. Out of fear of the loss of custody of their grandson and that Solovay would notify the media of the payment dispute, the McMahon's agreed to enter into a settlement agreement

6

with Hartman & Craven, LLP to resolve the alleged fees owed for Solovay's services ("Hartman").

61. Pursuant to the settlement agreement, the McMahon's agreed to pay a portion of Schmerge's alleged debt to Hartman in the amount of $122,465.00 in accordance with a payment schedule.

62. Solovay did not clarify or adequately itemize Schmerge's alleged debt to the McMahon's prior to their execution of the settlement agreement.

63. Schmerge thereafter continued to direct Solovay to settle the matrimonial action. Solovay refused. Apparently, Solovay had developed an extremely acrimonious relationship with the opposing party in the matrimonial action that hindered him from resolving the case.

64. In addition, Solovay continued to threaten to commence withdrawal proceedings and notify the press if the McMahon's did not pay his bills.

65. In about September 2007, after seeing no progress in the case and with Solovay's legal bills continuing to mount, Schmerge terminated Solovay.

66. Shortly thereafter, Schmerge, acting pro se, settled the case.

67. Solovay commence the instant action on July 30, 2008. That same day, Schmerge was accosted at her residence by a throng of reporters inquiring as to Solovay's claims.

68. Later that day, the Daily News published an article about the case containing intimate details about the McMahon's and the matrimonial action.

69. Upon information and belief, Solovay made good on his threats, notified the media of his commencement of the instant action and wrongfully provided the media with intimate details of the matrimonial action and the payment dispute.

70. The payments made by the McMahon's on Schmerge's behalf totaling more than $95,000.00 and the McMahon's execution of the settlement agreement were the direct results of coercion, duress, fraud and/or undue influence exercised by Solovay.

71. In addition, the fees charged by Solovay for the work purportedly performed were unconscionable.

72. By reason of the foregoing, the settlement agreement and any other payment agreements made by the McMahon's must be rescinded and all payments made by the McMahon's to Solovay or his law firm must be refunded.

73. The McMahon's have no adequate remedy at law.

## AS AND FOR A SECOND COUNTERCLAIM FOR UNJUST ENRICHMENT

74. The McMahon's repeat, reiterate and reallege their allegations contained in paragraphs "37" through "73" above as if fully set forth at length herein.

75. By reason of the wrongful conduct as aforementioned, Solovay has been unjustly enriched in an amount in excess of $95,000.00 for which he his liable to the McMahon's.

**WHEREFORE**, the McMahon's demand judgment: (a) dismissing the complaint with prejudice; (b) for judgment on their counterclaims; (c) for the interest, costs, disbursements and attorneys' fees incurred herein; and (d) for such other and further relief as this Court deems just and proper given the circumstances.

Dated: New York, New York
November 17, 2008

RUSSELL M. WOLFSON
Attorney for Defendants Edward McMahon and Pamela McMahon

By: /s/Russell M. Wolfson
Russell M. Wolfson (RW2847)
The Woolworth Building
233 Broadway, Suite 2200
New York, New York 10279
(212) 792-0198

To: Michael L. Shanker, Esq.
THE SHANKER LAW GROUP
Attorneys for the Plaintiff Norman Solovay
101 Front Street
Mineola, NY 11501
(516) 741-4000